UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREEN MILLER, JR., <br><br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA, ET AL., <br><br> Defendants. | Civil Action No.  06-1935 (JDB) |

## MEMORANDUM OPINION

Plaintiff Green Miller, Jr. filed this suit in late 2006 seeking to set aside defendant District of Columbia's ("defendant" or "the District") sale of two of his properties at a tax auction and to recover damages for the District's allegedly unlawful possession of two others.  The Court denied plaintiff's request for a temporary restraining order ("TRO"), both because of substantial doubt that subject-matter jurisdiction lies in this court and because plaintiff had failed to demonstrate irreparable harm.  Miller v. District of Columbia, Civ. A. No. 06-1935, 2006 U.S. Dist. LEXIS 84120, at *8-*13 (D.D.C. Nov. 20, 2006).  Defendant has now moved to dismiss plaintiff's suit for lack of subject-matter jurisdiction.  For the reasons set forth below, the Court will grant in part and deny in part defendant's motion, and will refer plaintiff's surviving claim to the U.S. Bankruptcy Court for the District of Columbia pursuant to 28 U.S.C. § 157(a) and DCt.LBR 5011-1.

## BACKGROUND

The facts are drawn essentially verbatim from this Court's previous opinion denying the TRO.  See 2006 U.S. Dist. LEXIS 84120, at *1-*4.  Plaintiff owned a group of properties in the

1

mid-1990's. As is relevant here, he owned four properties located at (a) 1330 Belmont Street NW, (b) 1332 Belmont Street NW, (c) 2560 University Place NW, and (d) 6920 Eighth Street NW. Plaintiff owed back taxes on all four of these properties. He filed a bankruptcy petition in April of 1996. Although the filing of that petition activated the automatic-stay provision of 11 U.S.C. § 362, the District notified plaintiff of its intent to take possession of the Belmont Street properties. On September 20, 1996, the District filed suit in Superior Court to remove the cloud of title over those properties. Unbeknownst to plaintiff, however, defendant had already taken title to 1330 and 1332 Belmont through a pair of deeds issued by the mayor to the District's "Homestead Housing Preservation Program" in August of 1996. The District's quiet-title suit was eventually dismissed when one of Belmont's lien holders alerted the Superior Court to the automatic stay.

    In September of 1997, the bankruptcy court issued an order confirming the reorganization plan proposed by plaintiff. Article IV of the reorganization plan, entitled "Treatment of Claims," contemplated that plaintiff would retain ownership of the Belmont properties, but stated that if he did not either sell the properties within six months for an amount sufficient to pay the back taxes or donate the properties to a non-profit group, then he would have to "abandon all claims to the lots and consent to the relief sought in the D.C. Superior Court proceeding." A consent order filed the following summer modified the original reorganization plan in some respects and also clarified that plaintiff would "consent to judgment in any quiet title action" brought by defendant if he was "unable to pay off the Real Property Taxes on said lots as provided in the Confirmed Plan." Article VIII of the reorganization plan provided that the bankruptcy court would "retain jurisdiction of this case to: determine . . . any matters arising concerning the title to property of the Debtor, [or] the sale thereof . . . ; . . . hear and determine any adversary proceedings or contested matters commenced by the Debtor; . . . enforce the provisions of [this] Plan and resolve all other matters as

may be set forth in the order of Confirmation [of this Plan]."

In August of 1998, one month after the reorganization plan was modified, plaintiff learned that the District had taken title to the Belmont properties two years earlier. The District finally returned the Belmont properties to plaintiff via a quit-claim deed in June of 2002. Meanwhile, taxes on the two remaining properties, one on Eighth Street NW and another on University Place NW, continued to accrue. Believing that the damages he had suffered over the two years during which defendant possessed the Belmont properties exceeded the taxes that he owed on the two other properties for the 2005 year, plaintiff refused to pay those taxes. On July 12, 2006, the District sold the Eighth Street and University Place properties at a tax sale.

In his pro se complaint, plaintiff sought a TRO and a permanent injunction setting aside the tax sales of the 6920 Eighth Street NW and 2560 University Place NW properties, compensatory damages for emotional distress and mental anguish, punitive damages, attorney fees and costs, and an award of rent for the six-year period of allegedly unlawful possession of the Belmont properties. Plaintiff then moved for a TRO and a permanent injunction to set aside the tax sale. This Court denied plaintiff's motion, concluding that he had shown little likelihood of success on the merits and had failed to demonstrate irreparable harm. Miller, 2006 U.S. Dist. LEXIS 84120, at *7-*13. In denying the motion, the Court expressed doubt that subject-matter jurisdiction properly lies in this court and therefore provided an opportunity for defendant to seek dismissal on that basis and for plaintiff to respond. Id. at *14. Defendant's motion to dismiss for lack of subject-matter jurisdiction, to which plaintiff has responded, is now ripe for resolution.

## STANDARD OF REVIEW

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court --

3

plaintiff here -- bears the burden of establishing that the court has jurisdiction.  See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) ("[A] Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 18 (D.D.C. 1998). At the stage of litigation when dismissal is sought, a plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true.  See Jerome Stevens Pharmaceuticals, Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); St. Francis Xavier Parochial Sch., 117 F.3d at 624-25 n.3; Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986).

**DISCUSSION**

In opposing defendant's motion to dismiss, plaintiff has offered no reason for the Court to question the conclusion that it tentatively reached in its prior opinion -- that it lacks subject-matter jurisdiction over plaintiffs' challenge to the sale of his properties at a tax auction and over his related request that the tax sale be "set aside."  See Miller, 2006 U.S. Dist. LEXIS 84120, at *8-*9. First, the D.C. Circuit has held that District of Columbia courts have "exclusive jurisdiction over all challenges to District of Columbia taxes including those involving federal statutory or constitutional claims in lieu of (rather than concurrently with) jurisdiction in the federal courts."

Jenkins v. Wash. Convention Ctr., 236 F.3d 6, 11 (D.C. Cir. 2001); see id. at 10 ("Congress has vested exclusive jurisdiction in the District of Columbia courts over all challenges to assessments and claims for refunds of [D.C.] taxes."). To the extent that plaintiff's challenge to the sale of his properties at a tax sale calls into question the validity of the manner in which the District assesses or collects taxes or grants refunds, that challenge must be brought in Superior Court. Id.

But even if Jenkins does not foreclose subject-matter jurisdiction, the federal ("FTIA") and District of Columbia ("DTIA") Tax Injunction Acts do. The FTIA, 28 U.S.C. § 1341, bars district courts from enjoining, suspending, or restraining "the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." See Roswell v. LaSalle Nat'l Bank, 450 U.S. 503, 512 (1981).[1] Federal courts, including the Seventh Circuit in an opinion by Judge Posner, have held that a tax sale -- such as the one for plaintiff's Eighth Street NW and University Place NW properties -- "is a mode of tax collection," and consequently that "an action to enjoin [the tax collection], or declare it illegal, or rescind it . . . would be barred by the [FTIA]." Wright v. Pappas, 256 F.3d 635, 637 (7th Cir. 2001); see also, e.g., Deshazo v. Baldwin County, Civ. A. No. 06-0174, 2006 U.S. Dist. LEXIS 51118, at *9-*10 (S.D. Ala. July 25, 2006); Bouchard v. Clinton County, Civ. A. No. 06-0418, 2006 U.S. Dist. LEXIS 22937, at *9-*19 (N.D.N.Y. April 25, 2006). This conclusion, which rests on the rationale that a tax sale constitutes a "mode of tax collection," Wright, 256 F.3d at 637, applies with equal

---

[1] The Court recognizes, as it did in its prior opinion, that the D.C. Circuit has not definitively resolved whether the District of Columbia qualifies as a state for purposes of the federal Tax Injunction Act. See Jenkins, 236 F.3d at 7. Judge Kollar-Kotelly, whose judgment the court of appeals affirmed on other grounds, conducted a thorough analysis of the question and concluded that the District did qualify as a state under the statute. Jenkins v. Washington Convention Center, 59 F. Supp. 2d 78, 81-82 (D.D.C. 1999). This Court would be inclined to agree with that conclusion, but again need not decide the question given the common language of the federal and D.C. statutes.

5

force to the DTIA, since its provision also employs the term "collection." See D.C. Code § 47-3307 ("No suit shall be filed to enjoin the assessment or collection by the District of Columbia or any of its officers, agents, or employees of any tax."). One aspect of plaintiff's suit constitutes an attempt "to enjoin the assessment or collection" of taxes by District officials, and therefore falls within the scope of the DTIA. Furthermore, to the extent that the FTIA also applies, its plain terms divest the Court of subject-matter jurisdiction so long as there is "a plain, speedy and efficient remedy" available in District of Columbia courts. See 28 U.S.C. § 1341. The Court pointed to just such a remedial scheme in its previous opinion. Miller, 2006 U.S. Dist. LEXIS 84120, at *7. Accordingly, the FTIA or the DTIA (or both) deprive this court of subject-matter jurisdiction over the aspect of plaintiff's suit seeking to set aside or undo the sale of his properties at a tax auction.

As mentioned in the Court's previous opinion, id. at *9 n.2, plaintiff suggests various other bases for subject-matter jurisdiction. See Compl. at 3. Three of them are unavailing. The first, 28 U.S.C. § 158, grants district courts appellate jurisdiction over challenges to decisions of bankruptcy courts. 28 U.S.C. § 158(a) ("[D]istrict courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges."). Here, plaintiff's claim for damages was brought directly in the district court, thus skipping over the procedural step required for 28 U.S.C. § 158(a) to apply -- that the bankruptcy court first adjudicate the case. The second suggested basis for jurisdiction, D.C. Code § 47-847, is a District of Columbia law that provides a mechanism for owners to redeem their properties sold at tax sales. As was explained in the previous section, District of Columbia courts have exclusive jurisdiction over claims arising under the District's tax laws. See Jenkins, 236 F.3d at 11-12. With respect to the third suggested basis for jurisdiction, Article VIII of the reorganization plan approved by the bankruptcy court states that that court would "retain jurisdiction of this case to . . . determine any matters arising

concerning the title to property of the Debtor, [or] the sale thereof."  All of plaintiff's claims appear to be ones that concern "the title to property of the Debtor, [or] the sale thereof," and would therefore lie within the bankruptcy court's jurisdiction.  Moreover, Article VIII of the reorganization plan grants the bankruptcy court jurisdiction over "any adversary proceedings or contested matters commenced by the Debtor," a class that includes this case.  Accordingly, none of these three provisions supplies federal subject-matter jurisdiction over plaintiff's claims.

    In his opposition to defendant's motion to dismiss, plaintiff suggests an additional and independent ground for this Court's jurisdiction.  Pl.'s Opp'n at 1.  Plaintiff contends that the District's taking of his two Belmont Street properties violated the automatic stay order entered by the bankruptcy court.  His complaint, given the generous construction to which pro se allegations are entitled, see Fletcher v. Reilly, 433 F.3d 867, 877 (D.C. Cir. 2006), includes more than enough to have placed defendants on notice of this claim.  See Compl., Prayer for Relief, (c)-(g).  Hence, the question then becomes whether this allegation suffices to establish subject-matter jurisdiction.  The Court concludes that it does.  District courts have original but not exclusive jurisdiction over all civil cases arising under, or arising in or related to, the bankruptcy laws.  28 U.S.C. § 1334(b).  "A claim 'arises under' [the bankruptcy laws] if the claim is made pursuant to a provision of title 11."  In re U.S. Office Prods. Co. Sec. Litig., 313 B.R. 73, 79 (Bankr. D.D.C. 2004).  Under the bankruptcy laws, which are codified at Title 11 of the United States Code, debtors such as plaintiff are afforded automatic stays to protect them against the collection efforts of creditors.  11 U.S.C. § 362(a); see also United States v. Inslaw, Inc., 932 F.2d 1467, 1471 (D.C. Cir. 1991).  The bankruptcy code provides a cause of action for a debtor to recover damages -- including attorney fees, costs, and even punitive damages -- for the violation of an automatic stay.  11 U.S.C.§ 362(k).  This is precisely the violation that plaintiff has alleged in his Complaint and reasserted in his

opposition to defendant's motion to dismiss.  Original jurisdiction over this claim seeking damages for the violation of an automatic stay, which comprises a claim "made pursuant to a provision of title 11," In re U.S. Office Prods. Co. Sec. Litig., 313 B.R. at 79, therefore lies in this Court.  To the extent that defendant's motion can fairly be read as seeking dismissal of this claim, that aspect of the motion must be denied.

      This is not the end of the inquiry, however, because a district court's jurisdiction over civil proceedings arising under the bankruptcy code is original but not exclusive.  28 U.S.C. § 1334(b).  A district court that has jurisdiction over certain matters arising under the bankruptcy code may refer those matters to an appropriate bankruptcy court.  28 U.S.C. § 157(a); see In re U.S. Office Prods. Co. Sec. Litig., 313 B.R. at 79.  The local rules of this court likewise recognize that "all cases under Title 11 and all proceedings arising under Title 11" are to be "referred to the Bankruptcy Judge of this District."  DCt.LBR 5011-1.  Upon referral, the bankruptcy court "may hear and determine," among other matters, "all core proceedings arising under title 11."  28 U.S.C. § 157(b)(1).  Although the non-exhaustive list of "core proceedings" in § 157(b)(2) does not include violations of an automatic stay, courts generally agree that claims under 11 U.S.C. § 362(k) and its predecessor (§ 362(h)) qualify as "core proceedings."  See, e.g., Price v. Rochford, 947 F.2d 829, 832 n.1 (7th Cir. 1991); Budget Serv. Co. v. Better Homes of Va., Inc., 804 F.2d 289, 292 (4th Cir. 1986).  Accordingly, if this Court were to refer plaintiff's surviving claim to the bankruptcy court, that court would have the authority to adjudicate the claim, with appellate review lodged in this Court.  See 28 U.S.C. § 157(b)(1); id. § 158(a).  This Court has made such referrals in the past, including in a case involving an automatic stay.  See In re Wilson, Bankr. No. 01-0092, 2006 WL 2348539 at *1 n.2  (Bankr. D.D.C. July 17, 2006).  Were there an obvious non-jurisdictional bar to plaintiff's claim, such as the statute of limitations, the Court might be hesitant

to take this step.[2]  But given the absence of such a bar and the bankruptcy court's greater competence in this area of the law, referral is appropriate here.[3]

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted in part and denied in part.  The Court will refer plaintiff's surviving claim under 11 U.S.C. § 362(k) to the U.S. Bankruptcy Court for the District of Columbia pursuant to 28 U.S.C. § 157(a) and DCt.LBR 5011-1.  A separate order has been posted on this date.

    /s/ John D. Bates    
**JOHN D. BATES**
United States District Judge

Dated:     June 18, 2007

---

[2]  Courts generally agree that there is no statute of limitations on claims for damages brought under 11 U.S.C. § 362(k).  See, e.g., Price, 829 F.2d at 831; In re Bernheim Litig., 290 B.R. 249, 258-59 (Bankr. D. N.J. 2003); Koffman v. Osteoimplant Tech., 182 B.R. 115, 124 (Bankr. D. Md. 1995).

[3]  Plaintiff appears to suggest that referral to the bankruptcy court is inappropriate because he could then simply apply for "withdrawal of reference" under 28 U.S.C. § 157(d) and return the case to this Court.  Pl.'s Opp'n at 2.  To withdraw the referral, however, the case must first be referred, and plaintiff would then need to show good cause.  28 U.S.C. § 157(d).  Nor does his claim present circumstances that would obligate the Court to withdraw the case.  Such circumstances arise only when "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  Id.  Plaintiff's narrow surviving claim does not appear to implicate any federal laws beyond those in the bankruptcy code.